FRANK D. UPCHURCH, Jr., Judge,
dissenting:
I respectfully dissent. Albert Nagy was convicted of second degree murder. Had I been in his shoes, I cannot say that I would have acted any more reasonably. There was nothing whatever in his actions or conduct “evincing a depraved mind regardless of human life.” § 782.04(2), Fla.Stat. (1983). The victim, Ray McLaughlin, was twenty-six years old, six-foot-three-inches tall and weighed two hundred forty pounds. Nagy was twice as old and no match physically for McLaughlin. McLaughlin was a bully and intimidated Nagy and others, including the police who would not approach him without a backup. McLaughlin had been placed on probation for a battery of Nagy. Even this did not deter him and he continued to harass and threaten Nagy.
In contrast, Nagy was a peaceful and law abiding person. He and his wife operated a small business in Orange City. Nagy worked hard, got along well with his neighbors, and led a productive existence. Were it not for McLaughlin, he would probably have continued his life in harmony with his chosen community.
Nagy sought help from the police and the State Attorney’s office. The police said they could not help, but warned Nagy that McLaughlin was dangerous and reputedly carried a firearm. Avoidance was not practical because McLaughlin worked at a business in close proximity to Nagy’s and the two shared the same parking area. The State Attorney’s ‘ office pegged Nagy, an Hungarian immigrant with a heavy accent, as an eccentric or pest and made no attempt to investigate Nagy’s claims or to obtain a revocation of McLaughlin’s probation. Only when his pleas for help were •fruitless did Nagy arm himself. When he did, he selected a .22 caliber pistol and loaded it with .22 shorts, hardly a load *1109 which could be expected to inflict a mortal wound on a two hundred forty pound man.
On the day of the shooting, Nagy, thinking McLaughlin had left, prepared to close. As was his custom, he was taking down some sawhorse barricades around the parking area at the rear of his building bordering the alley used by customérs as well as McLaughlin. At this moment, McLaughlin entered the alley in his car. There were no witnesses other than Nagy and McLaughlin. It was obvious that McLaughlin was driving at a high rate of speed for the alley area because he struck one of the barricades with sufficient force to shatter it. Nagy stated that he had to dive out of the way when McLaughlin tried to run him down. Nagy also claimed that the shattered sawhorse was the one he was picking up and that he suffered an injury to his hand when the sawhorse was struck. Nagy stated that McLaughlin then backed up and jumped out of the car. At this point, Nagy claimed that he retreated to the door of his store only firing the single shot when McLaughlin was directly in front of him with an upraised arm.
In contrast to Nagy’s version of the events, the state claimed that McLaughlin was shot as he entered his vehicle. The ejected cartridge casing and the location of the body and bloodstains admittedly support the state’s version. Even if the state’s version is accurate, clearly there was nothing in defendant’s conduct that evinced a depraved' mind.
“Depraved mind” within the second degree murder statute has been variously defined as importing malice in the sense of ill will, hatred, or evil intent, and as an inherent deficiency of moral sense and rectitude.... It has also been stated that malice is not limited in its meaning to hatred, ill will and malevolence, but “denotes a wicked and corrupt disregard of the lives • and safety of others ... a failure to appreciate social duty.” (citations omitted)
Hines v. State, 227 So.2d 334 (Fla. 1st DCA 1969).
Here, Nagy did everything in his power to avoid McLaughlin. He sought help and found none, only a warning that his tormentor was dangerous and reputedly armed. Nagy armed himself only when it was apparent that he could expect no assistance. Even then, he did his best to avoid McLaughlin, waiting until McLaughlin had apparently left the area before he went outside. There is absolutely nothing to indicate that he failed to appreciate his social duty. In fact, his actions indicate a strong awareness of social duty. The worst that can be said is that he misjudged the danger.
The question then is not whether Nagy was properly convicted of second degree murder, but whether he was guilty of any crime. Whether murder or manslaughter is of small consequence, because the minimum mandatory penalty is the same (three years) in both instances.[1] “The taking of life is not justified as self-defense unless the defendant used all reasonable means in his power and consistent with his own safety to avoid the danger and avert the necessity of killing the deceased.” 16 Fla.Jur.2d Criminal Law § 1088 (1979). The state contends that the killing was not on Nagy’s premises so he had a duty to retreat. However, the duty to retreat must be consistent with one’s own safety and must be weighed against the apprehended danger. In my opinion, it must also be weighed against the steps that the defendant has taken to avoid a confrontation. Here, Nagy had every reason to believe McLaughlin was going to carry through with his threats to “get” him. McLaughlin was clearly the aggressor. Nagy had done nothing whatever to invite the assault. Nagy’s “retreat” had been going on for weeks.
Here, there was a “failure to appreciate social duty,” but it was McLaughlin’s failure, not Nagy’s. Nagy is the victim, not *1110 McLaughlin. The trial judge should have granted Nagy’s motion for judgment of acquittal.

. The trial judge imposed the minimum mandatory penalty but ordered that Nagy could serve his term in the county jail and provided that Nagy could be on work release at his place of business.